IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

OGDEN FIRE COMPANY NO. 1 and  :        CIVIL ACTION
SPRINT SPECTRUM, L.P.          :
                              :
        v.                    :
                              :
UPPER CHICHESTER TOWNSHIP and  :
ZONING HEARING BOARD OF UPPER  :
CHICHESTER TOWNSHIP            :        NO. 05-1031

## MEMORANDUM

**Padova, J.**                                    **March 30, 2006**

Plaintiffs, Ogden Fire Company No. 1 ("Ogden") and Sprint Spectrum L.P. ("Sprint"), have brought this action pursuant to the Telecommunications Act challenging Defendants' denial of their application to build a radio tower and related equipment behind Ogden's firehouse.  Before the Court are the parties' cross-motions for summary judgment.  A Hearing was held on the Motions on February 16, 2006.  For the reasons which follow, both Motions are granted in part and denied in part.

I.      FACTUAL BACKGROUND

Ogden's firehouse is located at 4300 Naamans Creek Road, Boothwyn, Pennsylvania, in Upper Chichester Township (the "Township").  (Joint Stipulation of Facts, "Stip." ¶¶ 1, 5.)  This site is located in an R-2 Medium Density Residential Zoning District.  (Stip. ¶ 5.)  The Township Zoning Hearing Board (the "Zoning Board") granted a special exception to Ogden for a "public use" of its property on June 19, 1969 under § 303.1 of the Township's zoning ordinance (the "Zoning Ordinance").  (Stip. ¶ 6.)  Ogden is a volunteer fire company that provides fire, ambulance, and rescue services to the residents of Upper Chichester Township and surrounding areas.  (Notes of Testimony from the Zoning Board's hearing regarding this matter, "N.T.," Vol. 1 at 14-15.)  Ogden

responds to approximately 550 requests for assistance per year.  (Id. at 15.)

Ogden uses the Delaware County Emergency Radio Center radio service which is a 500 mhz. system with three repeaters throughout Delaware County, this system is associated with the 911 system.  (Id. at 16-17.)  Even with the repeaters, Ogden experiences coverage problems in certain sections of the Township.  (Id.)  In addition to the 500 mhz. system, Ogden shares a 150 mhz. radio system (the "Local System") within the Township with other fire companies, local police, school crossing guards and street maintenance crews.  (Id. at 18-19.)  The Local System does not have repeaters and cannot reach all areas within the Township.  (Id. at 18-19.)  Ogden has experienced problems on the Local System with calls that haven't been heard and fire police who have been on location but haven't been able to communicate with the police.  (Id. at 60.)  These problems have been building for the last ten years and occur on an almost daily basis.  (Id. at 71-72.)  Ogden wants to construct a radio operations center within its firehouse and a 130 foot radio tower in its rear yard at 4300 Namaans Creek Road in order to correct those deficiencies.  (App. at 4-5.)

Sprint provides personal communications services ("PCS") over a network of wireless telecommunications facilities ("WCF") pursuant to a license from the FCC.  (N.T. Vol. 2 at 147.)  Sprint's wireless telecommunications services are provided through a series of base stations that transmit and receive over assigned bandwidth in particular areas.  (Id. at 148.)  These base stations have to be within a mile or two mile radius of its customers' mobile phones.  (Id. at 148-49.)  Sprint uses a series of these base stations that work together to cover an entire area.  (Id. at 149.)  In order to make or receive a phone call, a customer has to be close enough to the nearest base station.  (Id. at 149.)  Poor call quality, inability to make or receive calls, and call drops are generally caused by lack of the ability of the phone and the closest base station to communicate with each other.  (Id. at

149-50.)  Sprint's service is weak in the area of the Ogden Fire Station on Naamans Creek Road. (N.T. Vol. 2 at 150.)  Sprint wishes to establish a telecommunications facility in the yard behind Ogden's firehouse to fix the deficiency in its PCS coverage in that area.  (App. at 4.)

In order to fix the deficiencies in Ogden's radio services and Sprint's PCS coverage, Sprint and Ogden jointly filed an application with the Township and the Zoning Board (the "Application") on August 31, 2004 to erect a "[s]teel monopole 130 feet in height for mounting emergency service (fire company) and wireless [t]elecommunications (PCS) antennas, [r]adio equipment on ground in fenced area at base of tower."  (Application, "App.," at 3.)  Sprint would install the tower on the Ogden firehouse property to meet the needs of both Ogden and Sprint.  (Id. at 4.)  In addition, Sprint would pay monthly rent to Ogden.  (Id.)  The Application asked the Zoning Board to: (1) find that the proposed monopole and related radio equipment are permitted as an accessory use to the permitted fire company use on the subject property pursuant to § 303.1 or § 304 of the Zoning Ordinance; (2) grant a variance from the height limitation of § 305.8 of the Zoning Ordinance; (3) approve a special exception for Sprint's proposed wireless communications facility pursuant to §§ 303.7, 1814 and 2106(2) of the Zoning Ordinance; or, in the alternative, (4) grant a variance from the use provisions of § 302 of the Zoning Ordinance to allow the proposed monopole, equipment and use.  (Id. at 5.)

The Zoning Board held hearings to consider the Application on October 11, 2004, November 3, 2004, December 1, 2004, and January 5, 2005.  (Stip. ¶ 8.)  Plaintiffs submitted evidence to the Zoning Board and presented seven witnesses, including two experts, who testified in support of the Application with respect to the following issues:

1.   Whether Ogden needs the tower and related radio equipment to correct its radio

communications deficiencies.  (N.T. Vol. 1 at 20-23, 35-42.)

2.   Whether Sprint needs to place a WCF antenna on the tower to provide PCS coverage in the portion of the Township around Ogden's firehouse.  (N.T. Vol. 2 at 154-55, 176-77, 190-91, 204.)

3.   Whether Ogden's use of the tower would be an accessory use to Ogden's current use of the property because communications are necessary to Ogden's operations.[1]  (N.T. Vol. 1 at 23-24.)

4.   Whether Ogden's use of the tower would be a "municipal or public use" because radio communications are necessary and essential to the emergency services provided by Ogden to the community.  (Id. at 16, 23-24.)

5.   Whether the tower would satisfy the special exception criteria regarding the height of the monopole as an "accessory structure" as well as the variance criteria regarding the use and height of the monopole.   (Id. at 81-117, Vol. 2 at 126-44.)

6.   Whether Sprint's attachment of a WCF antenna to the tower would satisfy the special exception criteria for allowance of that use.  (N.T. Vol. 1 at 93-94, 97-100, 103-07; Vol 2 at(127-30, 150-65, 176; App.)

7.   Whether other carriers providing functionally equivalent services have been granted greater relief than that requested by Ogden and Sprint.  (Joint Appendix, "J.A." Exs. 13, 16.)

8.   Whether the tower is the least intrusive means of filling Sprint's gap in coverage in the

---

[1]The Zoning Ordinance defines accessory uses as: "off-street parking or private garage," "signs," "utility or tool shed," "private swimming pool," "minor home occupation," "satellite antenna," "home based day care center," "small collection for recycling (on public land)," "sale of agricultural products," and "any accessory use on the same lot with and customarily incidental to any of the uses permitted above and not detrimental to the neighborhood."  Zoning Ordinance §§ 204, 304.

Township.  (N.T. Vol. 2 at 161-168, 177, 182-83198; Vol 3 at 267-69, 272-74.)

The Zoning Board denied the Application in a written opinion dated February 10, 2005 (the "Decision").  (Stip. ¶ 9.)  Although Ogden and Sprint jointly applied to build the tower for Ogden, with Sprint attaching an antenna to the tower once it is built, the Zoning Board specifically addressed the Application as an application by Sprint to build a WCF tower for Sprint to which Ogden would attach a radio antenna for its own use.  (Decision at 21.)  The Zoning Board found that Ogden and Sprint propose to erect a 133 foot stand-alone WCF tower for the transmission/reception of wireless communications services which will also accommodate the needs of Ogden by enhancing its radio signal, that Ogden is located in a R-2 Residential District, and that Sprint did not submit the requisite evidence to support an application to erect a stand-alone WCF tower in an R-2 Residential District. (Id. at 20.)  The Zoning Board also found that the WCF would not be an accessory structure to the firehouse because it is not a use "customarily incidental and subordinate to the principal use of the land or building and located on the same lot with such principal use."  (Id. at 21-22, citation omitted.)  The Zoning Board rejected the special exception for a tower over 15 feet in height because the WCF is not an accessory use or structure to the firehouse.  (Id. at 22.)  The Zoning Board rejected the special exception to build the WCF because stand-alone WCF towers are not permitted in R-2 residential districts.  (Id.)  The Zoning Board also rejected the alternate request for a variance because a 133 foot stand-alone WCF tower is not a structure permitted in an R-2 residential district and because Sprint had not satisfied the requirements for a variance under the Pennsylvania Municipal Planning Code.  (Id. at 23-25.)

The Complaint asserts three claims against Defendants.  In Count I of the Complaint, Plaintiffs maintain that Defendants violated 47 U.S.C. § 322(c)(7)(B)(i)(I) by unreasonably

discriminating among providers of functionally equivalent services when it denied their joint application having previously approved an application to build a telecommunications tower in an R-2 residential district filed jointly by Reliance Hook and Ladder Company No. 1 and Metro Phone and having previously approved an application to build a telecommunications tower in an R-1 residential district filed by AT&T Wireless.  In Count II of the Complaint, Plaintiffs assert that Defendants violated 47 U.S.C. § 322(c)(7)(B)(iii) by denying the Application even though the written record does not contain substantial evidence supporting that decision.  In Count III of the Complaint, Plaintiffs appeal the Zoning Board's denial of the Application pursuant to state law.

II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate an absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248.  An issue is "material" if it may affect the outcome of the matter pursuant to the underlying law.  Id.  An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

"Where, as here, cross-motions for summary judgment have been presented, we must consider each party's motion individually.  Each side bears the burden of establishing a lack of genuine issues of material fact."  Reinert v. Giorgio Foods, Inc., 15 F. Supp. 2d 589, 593-94 (E.D. Pa. 1998).

III.     DISCUSSION

A.     The Telecommunications Act of 1996

The Telecommunications Act of 1996 (the "TCA"), was enacted by Congress to "provide 'a pro-competitive, de-regulatory national policy framework designed to rapidly accelerate private sector deployment of advanced telecommunications and information technologies and services to all Americans by opening all telecommunications markets to competition.'" APT Pittsburgh Ltd. P'ship v. Penn Twp., 196 F.3d 469, 473 (3d Cir. 1999) (quoting H.R. Conf. Rep. No. 104-458 (1996), reprinted in 1996 U.S.C.C.A.N. 10, 1124)).  In order to facilitate this goal while allowing local control of the siting of telecommunications towers, "Section 332(c)(7) of the TCA expressly preserves the traditional authority enjoyed by state and local government to regulate land use and zoning, but places several substantive and procedural limits upon that authority when it is exercised in relation to personal wireless service facilities."  Id.; see also Schiazza v. Zoning Hearing Board of Fairview Twp., 168 F. Supp. 361, 366 (M.D. Pa. 2001) (citing  Town of Amherst v. Omnipoint Commc'ns Enters., Inc., 173 F.3d 9, 13 (1st Cir.1999)).  The cellular siting subsection of the TCA provides as follows:

> (7) Preservation of local zoning authority.
>  (A) General authority. Except as provided in this paragraph, nothing in this Act shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
>  (B) Limitations.

(i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof--

   (I) shall not unreasonably discriminate among providers of functionally equivalent services; and

   (II) shall not prohibit or have the effect of prohibiting the provision of personal wireless services.

(ii) A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.

(iii) Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emissions.

(v) Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

47 U.S.C. § 332(c)(7).

On November 17, 1997, the Township adopted Ordinance No. 579, which amended the Township Code to provide for the use, construction and siting of WCFs. (J.A. Ex. 11.) Ordinance No. 579 amended § 303 of the Zoning Ordinance to permit "WCF with Antenna attached to a nonresidential building or structure of a permitted church, educational, public, municipal or governmental building or facility" as a special exception in R-2 Residential Districts.  Zoning

Ordinance § 303.7.  Zoning Ordinance §1814 was added to provide conditions and standards for special exceptions for WCF.  Pursuant to § 1814, a WCF with Antenna that is attached to an existing tall structure shall not exceed the height of the existing structure by more than 15 feet.  Zoning Ordinance § 1814(4)(A).  A WCF with Antenna that is not mounted on an existing structure shall not have a tower or antenna height of more than 180 feet.  Zoning Ordinance § 1814(4)(B).

Plaintiffs argue that the denial of their Application had the effect of unreasonably discriminating among providers of functionally equivalent services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I) because the Zoning Board approved applications to build larger WCF towers submitted by other, similarly situated, providers of wireless telecommunications services.  Plaintiffs also argue that the denial of their Application violated 47 U.S.C. 332(c)(7)(B)(iii) because the Zoning Board's Decision is not supported by substantial evidence in the written record.

B.      Unreasonable Discrimination Among Providers

"The TCA does not prohibit all discrimination against providers, only unreasonable discrimination." Omnipoint Commc'ns Enters., L.P. v. Zoning Hearing Bd. of Easttown Twp., 331 F.3d 386, 395 (3d Cir. 2003) (citing AT&T Wireless PCS v. Virginia Beach, 155 F.3d 423, 427 (4th Cir. 1998)).  The unreasonable discrimination test consists of two prongs; in order "to satisfy the first prong of the unreasonable discrimination test, Plaintiffs must demonstrate that other providers of functionally equivalent services were treated differently than it was." Schiazza v. Zoning Hearing Bd., 168 F. Supp. 2d 361, 370 (W.D. Pa. 2001) (citation omitted).  In determining functional equivalence, the Court looks "to the telecommunications services the entity provides, not to the technical particularities (design, technology, or frequency) of its operations." Nextel West Corp. v. Unity Twp., 282 F.3d 257, 267 (3d Cir. 2002).  In order to satisfy the second prong, Plaintiffs must

show that "the discrimination was unreasonable by demonstrating that the structure, placement or cumulative impact of the existing facilities make them more intrusive than the proposed facility." Schiazza, 168 F. Supp. 2d at 370 (citing APT Pittsburgh, 196 F.3d at 480 n. 8); see also Nextel West, 282 F.3d at 267.

Plaintiffs argue that they have been unreasonably discriminated against by the Zoning Board because other providers of functionally equivalent wireless telecommunications services, namely Metro Phone and AT&T, were permitted to erect larger towers in similarly zoned residential districts within the Township.

### 1.    The Reliance/Metro Phone application

On April 1, 1992, the Zoning Board approved the application of Reliance Hook and Ladder Company No. 1 (Reliance) and AWACS, Inc. d/b/a Metro Phone Company, for a special exception to permit Metro Phone to install and operate radio communications equipment in the basement of Reliance's firehouse and to construct and operate a 180 foot high radio communications tower with antennas to the rear of the firehouse.  (J.A. Ex. 13 at 1.)  This application was approved prior to the Township's adoption of Ordinance No. 579.  (J.A. Ex. 11.)  Like Ogden, Reliance was located in an R-2 medium density residential district.  (J.A. Ex. 13 at 1.)  The Zoning Board found the following facts in connection with the Reliance/Metro Phone application:  this use is an accessory use to the fire company use and the tower is an accessory structure to the firehouse building, requiring the applicants to obtain use and height special exceptions (Id. at 5); the tower and radio communications equipment will facilitate Metro Phone's cellular communications system which had a dead spot in the area of the tower (Id.); a tower with a minimum height of 180 feet was required in order to provide proper coverage to the service area (Id.); the base of the 180 foot tower will be 20 feet in

10

diameter, tapering to 48 inches at the top (Id.); the proposed tower will provide Reliance with a back-up communications system and, therefore, benefit Reliance's volunteer fire fighting activities and provide 911 service for Metro Phone's subscribers.  (Id. at 7.)  The Zoning Board also found that cellular phone communication service is an accessory use to the volunteer fire company and that the tower is an accessory use to the firehouse because:

> [i]n its operation, the volunteer fire company is dependent upon radio communications in order to respond to fire alarms.  The proposed cellular phone communication service provides a back-up communication system for Reliance, provides a 911 service for subscribers to such service and allows Delaware County to place its emergency service equipment upon the proposed tower which shall be detached from the fire house building.

(Id. at 9.)  The Zoning Ordinance provides that accessory structures shall not be more than fifteen feet in height, "except where a greater height is permitted by special exception in the case of an accessory to a nonresidential use."  Zoning Ordinance § 1706.2. Since the Zoning Board found that the cellular phone communication service was an accessory use to the fire company's use of its property for a firehouse, Reliance needed a special exception to construct a tower in excess of 15 feet.  (J.A. Ex. 13 at 9.)  The Zoning Board noted that "[a] use permitted by special exception is a permitted use unless, under the circumstances, such use would adversely affect the public health, welfare and safety of the surrounding area."  (Id. at 10.)  The burden is on the objectors to establish, by a preponderance of the evidence, that the proposed  use would be contrary to the public health, safety and welfare.  (Id.)  The Zoning Board found that the objectors did not meet their burden and that it had "no alternative but to grant the requested special exception(s) . . . ."  (Id.)

Plaintiffs contend that Reliance and Metro Phone sought the same type of relief requested by Ogden and Sprint under identical zoning provisions in that they applied for special exceptions for

11

the same type of tower in an R-2 Residential District.  Plaintiffs claim that the case for their tower is more compelling than the case for the tower on the Reliance property because the Ogden tower will be used for Ogden's own public safety radio system as well as for Sprint's wireless communications.  Plaintiffs further argue that the discrimination between the Reliance/Metro Phone application and their own was unreasonable because the tower they propose to build is significantly smaller and, therefore, less intrusive, than the tower approved for Reliance and Metro Phone. Plaintiffs maintain that there is no legitimate basis on the record for treating the Ogden/Sprint Application differently than the Reliance/Metro Phone application.

Defendants maintain that the Zoning Board did not discriminate against Ogden and Sprint by treating their application differently than the 1992 Reliance/Metro Phone application because, since that decision, the law has changed regarding when a provider of wireless communications services may erect a WCF as an accessory use.  Defendants rely on AWACS, Inc. v. Zoning Hearing Board of Newtown Township, 602 A.2d 604 (Pa. Commw. Ct. 1997).  The AWACS court explained that an accessory use is "a use subordinate to and customarily incidental to the principal use. Once something is defined as an accessory use, it is allowed by right." Id. at 607 (citing Sateach v. Beaver Meadows Zoning Hearing Bd., 676 A.2d 747 (Pa. Cmmw. Ct. 1996).  The AWACS court found that mobile phone antennae were not an accessory use for a residential apartment building because those antennae would not necessarily benefit building residents:

> the principal use of the apartment building on which the antennae were to be erected is, of course, residential.  The use to which Comcast would put these antennae is a business use. The antennae would serve Comcast's customers in the area, regardless of where they live, not Newtown Towers residents alone.  In fact, the antennae would not necessarily serve any residents of the building, unless they chose to become Comcast subscribers.  In this sense, the antennae are

> unlike, for example, a television antenna on top of an apartment building that serves the tenants of that building as an incident to their residential use.  The antennae may be a necessary part of Comcast's business use, but they are in no manner incident, subordinate or secondary to Newtown Towers' use, and may even lack a connection at all, if no Comcast subscribers reside there.

Id.  Defendants argue that the AWACS decision is controlling in this case because the proposed tower constitutes a commercial use by Sprint which is not customarily incidental to Ogden's use of its property as a firehouse and because the proposed tower would not serve Ogden's members unless they are Sprint PCS subscribers.

In the instant case, however, the tower would be used by Ogden in the performance of its functions as an emergency responder.  Ogden already operates a radio communications system as part of its primary mission.  That system has gaps in service which it seeks to cure via the proposed tower.  The Zoning Board even found, as a matter of fact, that "the tower will accommodate the needs of the Ogden Fire Company with respect to enhancing the Fire Company's radio signal." (Decision at 19.)  The Court finds, therefore, that the use by Ogden of a radio tower to enhance its existing radio communications system would be an accessory use as defined in Zoning Ordinance §§ 202 and 304 and as that term is defined in AWACS.  See AWACS, 602 A.2d at 607.

Defendants also argue that the discrimination among the providers in this case was not unreasonable because the Reliance/Metro Phone tower was approved before the Township adopted Zoning Ordinance 579.  However,  Zoning Ordinance 579 regulates the use, construction and siting of WCF, it does not bear upon the question of whether a radio tower can be as an accessory use to a firehouse.  Consequently, the intervening adoption of Zoning Ordinance 579 does not justify the discrimination between the Reliance/Metro Phone and Ogden/Sprint applications.

Defendants also argue that the Zoning Board appropriately distinguished between the Ogden/Sprint application and the Reliance/Metro Phone application because the proposed Ogden/Sprint tower would have a greater impact on the surrounding community.  Defendants maintain that the area around the Reliance firehouse at the time the Reliance/Metro Phone application was approved was quite rural while the area around Ogden's property is heavily residential. (Ans. of Defs. ¶84.)  However, the aerial photographs submitted by the parties do not support Defendants' contention that the area around the Reliance firehouse was quite rural in 1990. (J.A. Ex. 12.)  To the contrary, those photographs show that the area around the Reliance firehouse contained a school and a sizeable residential community in 1990.  (Id.)

The Court finds that Plaintiffs have satisfied the first prong of the unreasonable discrimination test by establishing that Metro Phone, which, like Sprint, is a provider of wireless telecommunications services, was treated differently than Sprint.  See Schiazza, 168 F. Supp. 2d at 370.  Plaintiffs have also demonstrated that the use by Ogden of a radio tower to enhance its existing radio communications system would be an accessory use to its use of its firehouse.  Plaintiffs have further established that  the Reliance/Metro Phone tower is both larger in diameter and significantly taller than the proposed Ogden/Sprint tower and that the neighborhoods surrounding both the towers are residential neighborhoods with identical zoning.  Consequently, the Court finds that Plaintiffs have satisfied the second prong of the unreasonable discrimination test by demonstrating that the structure, placement or cumulative impact of the existing Reliance/Metro Phone facility makes it more intrusive than the proposed Ogden/Sprint tower.  See id. at 370 (citing APT Pittsburgh, 196 F.3d at 480 n. 8); see also Nextel West, 282 F.3d at 267.

2.    AT&T Wireless application

On November 1, 2000, after adopting Zoning Ordinance 579, the Zoning Board approved the application of AT&T Wireless, which, like Sprint is a provider of wireless telecommunications services, to build a 180 foot monopole structure to be operated as a PCS cell tower antenna on land owned by the Township in an R-1 Low Density Residential District.  (Stip ¶ 22, J.A. Ex. 16 at 1.) However, under Zoning Ordinance 579, stand-alone WCF towers are not permitted in either R-1 or R-2 Residential Districts.   In R-1 Residential Districts, as in R-2 Residential Districts, WCF antennas are uses permitted by special exception only if they are attached to nonresidential buildings and they cannot exceed the height of the existing building by more than 15 feet.  Zoning Ordinance §§ 203.9(9), 1814(4)(A).  Despite the restrictions of Zoning Ordinance 579, the Zoning Board found that the proposed use of the property for a stand-alone WCF tower "is appropriate for the site, . . . compatible with the character of the surrounding neighborhood, . . . and will serve the best interest of the Township, convenience of the community and the public health, safety and welfare."  (J.A. Ex. 16 at 11.)  The Zoning Board also found that the allowance of a special exception "will not adversely affect the public health, safety and welfare . . .," and "[w]ill be in accordance with the Upper Chichester Comprehensive Plan . . . ."  (Id. at 12.)

Plaintiffs contend that there is no legitimate basis for treating the Ogden/Sprint Application differently from the AT&T application.  Like Ogden and Sprint, AT&T applied for a special exception after the Township passed the Zoning Ordinance restricting the placement of WCF stand-alone towers.  Although AT&T sought to erect a stand-alone WCF tower in an R-1 residential district rather than an R-2 residential district, the Zoning Ordinance bars stand-alone WCF towers in both R-1 and R-2 residential districts.  The Zoning Board did not explain why AT&T was

15

permitted to build a WCF tower despite the prohibition on such towers in R-1 residential districts. Defendants have submitted no evidence to the Court which would support the difference in treatment between the Ogden/Sprint Application and the AT&T application.  The Court finds, therefore, that Plaintiffs have met the first prong of the unreasonable discrimination test by establishing that AT&T, a provider of functionally equivalent telecommunications services, was treated differently than Sprint.  See Schiazza, 168 F. Supp. 2d at 370.  The Court further finds that Plaintiffs have met the second prong of the unreasonable discrimination test with respect to the AT&T application by demonstrating that the  AT&T tower is more intrusive than the proposed Ogden/Sprint tower because the AT&T tower is 47 feet higher than the proposed Ogden/Sprint tower.

The Court further finds, as a matter of law, that the Zoning Board unreasonably discriminated between the Sprint/Ogden Application and the applications filed by two other functionally equivalent providers, the Reliance/Metro Phone application and the AT&T application, in violation of 47 U.S.C. § 332(c)(7)(B)(i)(I).  Plaintiffs are, therefore, entitled to the entry of summary judgment in their favor on Count I of the Complaint.

C.    Substantial Evidence in the Written Record

As noted above, the TCA requires that a decision "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."  47 U.S.C. § 332(c)(7)(B)(iii).   The term "substantial evidence" as used in this statute "is a legal term of art. It 'does not mean a large or considerable amount of evidence, but rather such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Omnipoint Commc'ns Enters., L.P. v. Zoning Bd. of Easttown Twp., 248 F.3d 101, 106 (3d Cir. 2001) (quoting Pierce v. Underwood, 487 U.S. 552, 565 (1988)  (internal quotations

16

omitted)).  "In determining whether the evidence before [the zoning board] was substantial, a court views the record in its entirety and takes account of evidence unfavorable to the [board's] decision."  Omnipoint Corp. v. Zoning Hearing Bd. of Pine Grove Twp., 181 F.3d 403, 408 (3d Cir. 1999) ("Pine Grove II") (citing American Textile Mfr. Inst., Inc. v. Donovan, 452 U.S. 490, 523 (1981)).  The substantial evidence test applies to findings made by a zoning hearing board under the locality's own zoning requirements.  Id.  Plaintiffs contend that Defendants purposefully misconstrued their Application in order to deny it; ignored evidence in the record supporting the Application; and credited evidence regarding neighborhood aesthetics submitted by objectors in denying the Application, even though the TCA prohibits reliance on such evidence.

1.   The Application

The Application was submitted to the Zoning Board as a joint application to build a radio tower for Ogden as an accessory use to Ogden's use of the property as a firehouse and for Sprint to attach a WCF antenna to that tower.  Defendants have, however, taken the position that, no matter how cleverly it was worded, the Application is an application for Sprint to build a WCF as a stand-alone tower on Ogden's property, a use which is not permitted in an R-2 Residential District under the Zoning Ordinance.  The Zoning Board explained its characterization of the Application as follows:

> This appeal by Sprint is and can only be a request for approval of a Wireless Communication Facility, and not solely as a tower to improve the radio signal of the fire company.  There is no doubt that the appeal is for a permit to erect a WCF tower and to operate a WCF by a FCC licensed provider of Cellular telephone service.  The board cannot ignore that the appeal is by Sprint Spectrum LP, and that the testimony offered by Sprint on the record relates to cellular telephone service.  Although there was testimony that the fire company would be permitted to place its radio transmission equipment on the WCF,

17

> that does not convert this application into anything other than a
> Wireless Communication Facility for the transmission of cellular
> telephone service.  In fact, section 1814 5.E of the ordinance requires
> that local police, fire, and ambulance companies be specifically
> offered co-location on a WCF tower.

(Decision at 21.)  Having taken this position, the Zoning Board did not consider Ogden's entitlement

to build the proposed radio tower as an accessory use to the firehouse: "[t]he board specifically does

not render any opinion as to whether or not an antenna or tower for the transmission of radio signals

to be used by the fire company alone, is an accessory use or constitutes [an] accessory structure."

(Id. at 22.)  Defendants have pointed the Court to no legal authority supporting their decision to

construe the Application in this manner.  However, they have informed the Court that "the very first

time we heard that it was Ogden's application, with Sprint to co-locate," was when Plaintiffs filed

their motion for summary judgment.  (2/16/06 Tr. at 24.)

Defendants' position is belied by the Application, which states plainly that it is an application

filed by Sprint and Ogden for a "[s]teel monopole 130 feet in height for mounting emergency service

(fire company) and wireless [t]elecommunications (PCS) antennas."  (App. at 1.)  Indeed, the

background section of the Application states that:

> Ogden currently operates a radio system from its property, but
> that radio system lacks adequate coverage in parts of its service area.
> Installation of a repeater radio on a tower of substantially greater
> height will substantially improve its radio communications and thus
> the safety and efficiency of this [sic] volunteers.  Ogden desires to
> make this improvement.  The proposed monopole will meet this need.
> The installation of a tower on the Ogden property will meet
> the radio needs of both the Fire Co. and Sprint PCS (discussed below)
> and will provide an added benefit to Ogden in the form of the cost of
> construction of the monopole and the payment of monthly rent by
> Sprint PCS.

(Id. at 4.)  Defendants' position also ignores substantial evidence presented during the public

hearings on the Application.  The first witness to testify was William T. Robinson, Vice President

and Safety Officer of Ogden, who testified at length about Ogden's need for a radio tower to improve

its radio communications.  (N.T. Vol. 1 at 11-80.)  Mr. Robinson testified about the radio service that

Ogden currently uses, deficiencies in that service, and Ogden's longstanding interest in improving

that service.  (Id. at 16-20.)  Mr. Robinson also testified that the proposed tower would solve

Ogden's radio communications problems.  (Id. at 21-24.)  Bill Turner, a member of the Ogden Fire

Company and Captain of the Fire Police also testified regarding Ogden's 150 mhz radio system,

problems with that system, and Ogden's need to improve the system.  (N.T. Vol. 2 at 209-215.)

Thomas Robinson, a member of the Ogden Fire Company and a member of the Fire Police also

testified regarding problems with Ogden's radio communications system.  (N.T. Vol. 4 at 414-15.)

Having ignored the evidence in the record before it that the Application was a joint

application filed by both Ogden and Sprint to erect a tower for Ogden's radio communications on

which Sprint would place a WCF antenna, the Zoning Board construed the Application in a manner

which set it up for failure.  Once the Zoning Board decided that the Application was an application

filed by Sprint alone to erect a stand-alone WCF tower on Ogden's property, the Application could

not have been approved.  The Zoning Ordinance clearly prohibits the siting of a stand-alone WCF

tower in an R-2 Residential District.  See Zoning Ordinance §§ 203, 303.7, 803, 903, 1003, 1103.

The Zoning Board relied on these sections of the Zoning Ordinance to find that Sprint was not

entitled to a special exception to erect the proposed tower on Ogden's property:

> A Wireless Communication Facility is permitted by Special
> Exception in an R-2 Residential District, however, the ordinance does
> not permit a 133 foot stand alone tower to accommodate the antenna
> but allows by special exception a "WCF with Antenna attached to a
> nonresidential building or a structure of a permitted church,

> educational, public, municipal or governmental building or facility,
> and a building or structure owned by a public utility regulated by the
> Pennsylvania Public Utility Commission."  The proposed 133 foot
> stand alone tower servicing a WCF or not [sic] is not a use permitted
> by special exception in the R-2 Residential District.

(Decision at 22-23.)  The Zoning Board consequently considered the Application "as a request for a variance to permit a stand alone tower where the ordinance permits only that an antenna be placed on an existing structure" and, as discussed below, found that Sprint was not entitled to that variance. (Id.)

The Court finds that the Zoning Board's decision to treat the Application as an application brought solely by Sprint for the siting of a stand-alone WCF tower in an R-2 Residential District, rather than as a joint application to erect a radio tower to benefit Ogden, on which Sprint could attach an antenna by special exception, is not supported by substantial evidence in the written record.  The Court further finds that the Zoning Board's decision to ignore Ogden's request to build the tower on its property as an accessory use to the firehouse is not supported by substantial evidence in the written record.

> 2.    Entitlement to a special exception

Plaintiffs applied for two special exceptions for the siting and construction of the proposed tower.  Plaintiffs sought a special exception pursuant to Zoning Ordinance § 1706 to build a tower exceeding the height limitation for accessory structures.[2]  Plaintiffs also seek a special exception,

---

[2]As noted in Section III.B.1., above, the Zoning Ordinance provides that "[n]o accessory structure shall be more than one (1) story or fifteen (15) feet in height, except when a greater height is permitted by special exception in the case of an accessory to a nonresidential use."  Zoning Ordinance § 1706(2).  Although the Application only requests a variance from the height limitation of 35 feet contained in Zoning Ordinance § 305.8, the Zoning Board acknowledged, in the Decision, that Plaintiffs also sought, in the alternative, a special exception from the 15 foot height limit for accessory uses pursuant to Zoning Ordinance § 1706.2. (Decision at 2.)

pursuant to Zoning Ordinance § 303.7, to attach a WCF antenna to that tower.[3]   "A special exception is a conditionally permitted use, allowed by the legislature if specifically listed standards are met."  In re Brickstone Realty Corp., 789 A.2d 333, 340 (Pa. Commw. Ct. 2001) (citing Bray v. Zoning Board of Adjustment, 410 A.2d 909 (Pa. Commw. Ct. 1980)).  "Where a particular use is permitted in a zone by special exception, it is presumed that the local legislature has already considered that such use satisfies local concerns for the general health, safety, and welfare and that such use comports with the intent of the zoning ordinance."  Id.  The Pennsylvania Commonwealth Court has explained the burdens of proof with respect to an application for, and objections to, special exceptions as follows:

> In outline form, the rules concerning initial evidence presentation duty (duty) and persuasion burden (burden) in special exception cases may be restated as follows:
> Specific requirements, e. g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally:
> The applicant has both the duty and the burden.
> General detrimental effect, e.g., to the health, safety and welfare of the neighborhood:
> Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.
> General policy concern, e. g., as to harmony with the spirit, intent or purpose of the ordinance:
> Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant.

Bray, 410 A.2d at 912-13 (citations omitted). Where, as here, the zoning ordinance places the burden on the applicant "to show that the proposed project is not a detriment to the health, safety and general

---

[3]Zoning Ordinance § 303 allows a WCF "with Antenna attached to a nonresidential building or structure of a permitted church, educational, public, municipal or governmental building or facility, and a building or structure owned by a public utility . . ." in an R-2 Residential District as a Use Permitted by Special Exception.  Zoning Ordinance § 303.7.

welfare of the neighborhood," the objector retains the burden of presentation with respect to those

factors. Omnipoint Corp. v. Zoning Hearing Bd. Of Pine Grove, 20 F. Supp. 2d 875, 879 (E.D. Pa.

1998) ("Pine Grove I") (citing Bray 410 A.2d at 912), aff'd 181 F.3d 403 (3d Cir. 1999).

Consequently, the objectors, not the applicants, "retain the *initial* presentation burden with respect

to the detrimental effect of the [tower] on the character, property values, health and safety of the

neighborhood and its residents." Id. (emphasis in original).

In order to obtain a special exception from the height requirement of Zoning Ordinance §

1706, Plaintiffs have to satisfy the relevant conditions for special exception listed in Section 1802

of the Zoning Ordinance. Section 1802 provides that the Zoning Board shall consider the following

factors, where appropriate, when considering a request for a special exception:

> a. That the proposed use is consistent with the statement of
> community objectives per Section § [sic] 103 and the statement of
> purpose for the district in which the use is proposed.[4]
>
> b. That the proposed use is appropriate for the site in question in
> terms of size, topography, natural features, drainage, sewage and solid
> waste disposal, water supply, stormwater management, accessibility
> and availability of public services, and that adequate provisions will
> be made to protect sensitive environmental features such as streams,
> lakes, wetlands, slopes and mature trees.
>
> c. That the proposed use is compatible with the character of the
> surrounding neighborhood, will not interfere with or detract from
> legitimate uses and adjacent properties, and that adequate measures
> will be provided through building design, site layout, landscaping,

---

[4]The statement of community objectives provided in Section 103 state that this "Zoning
Ordinance is intended to implement the principles, policies and objectives of the Comprehensive
Plan and to guide and regulate the orderly growth and development of Upper Chichester Township."
Zoning Ordinance § 103. The statement of purpose of R-2 Residential Districts provides that such
districts "are to provide for continued medium density suburban type, single-family residential
development; to preserve existing medium density development and open space; and to provide for
and regulate certain uses permitted [by] special exception." Zoning Ordinance § 301.

planting and operational controls to minimize any adverse impacts caused by noise, lights, glare, odors, smoke, fumes, traffic, parking, loading and signage.

d. That the proposed use will serve the best interest of the Township, convenience of the community and the public health, safety and welfare.

e. That the proposed use is consistent with the Township Comprehensive Plan.

f. That the proposed use promotes orderly development, proper population density and the provision of adequate community facilities and services, including police and fire protection.

g. That the proposed use is suitable in terms of its effect on highway safety and traffic circulation, and that access, on-site circulation and parking are adequate in view of anticipated traffic.

h. That the proposed use will provide for adequate off-street parking, as required in Part 15.

i. That the proposed use will reflect effective site planning and design in terms of energy efficiency, environmental protection and aesthetic composition.

Zoning Ordinance § 1802.1. In order to obtain a special exception pursuant to Zoning Ordinance § 303.7 to attach Sprint's WCF antenna to the tower, Plaintiffs also have to satisfy the relevant conditions for special exception listed in Section 1814 of the Zoning Ordinance. Section 1814 provides that the following standards apply to WCF:

A. The applicant shall demonstrate, using accepted technological evidence, that the Antenna and Antenna Support Structure must be located where proposed in order to satisfy its function in the applicant's grid system.

B. If the applicant proposes to build a Tower (as opposed to mounting the Antenna on an existing tall structure), it is required to demonstrate that it contacted the owners of tall structures within a one-mile radius of the site proposed, requested permission to install

23

the Antenna on those tall structures and was denied permission for reasons other than economic reasons . . . .  If the Antenna can be physically and legally accommodated on an existing tall structure, the Township may deny the application to construct a new Tower.

C.  The applicant shall demonstrate that the Antenna Height is the minimum required to function satisfactorily . . . .

D.  The applicant shall demonstrate that the proposed Antenna and Antenna Support Structure are safe and the surrounding properties will not be negatively affected by Antenna Support Structure failure, falling ice or other debris . . . .

E. [T]he proposed Antenna Support Structure shall be required to accommodate, where possible, other users including . . . local police, fire and ambulance companies . . . .

F.  The applicant must demonstrate that it is licensed by the Federal Communications Commission (FCC) to provide wireless communications . . . .

G.  As the wireless communications facility is fully automated, adequate parking shall be required for maintenance workers.

H.  Antenna Support Structures shall, to the extent possible, be finished so as to reduce the visual impact . . . .

I.  A full site plan shall be required for all Landsites . . . .

J.  A plan shall be required for all WCF . . . to illustrate the relationship between the proposed facility and the adjacent structures and property lines.

K.  Towers shall be designed and constructed to all applicable standards of the American National Standards Institute . . . .

L.  A soil report . . . shall be submitted to the Township . . . .

M.  Towers and Antennae shall be designed to withstand wind gusts of at least 100 miles per hour.

N.  An Antenna may not be located on a building or structure that is listed on the Township's Historic Resources Map.

O.  No Antenna or its support structure may be artificially lighted except when required by the Federal Aviation Agency.

P.  Applicant shall maintain with the Township the current name, address and emergency telephone number of the owner or operator .
. . .

Zoning Ordinance § 1814.5.  Plaintiffs presented the following evidence with respect to these conditions for special exceptions.  James Rudolph, a civil engineering expert, submitted a plan showing the relationship between the proposed tower and the adjacent structures and property lines; the plan also shows the vegetation on the Ogden property,  including existing stands of mature trees, which would act as buffers.  (N.T. Vol. 1 at 85-87.)  Rudolph testified that the tower and antenna would be designed and constructed in accordance with all applicable codes and that the tower would be designed by a licensed professional engineer, would withstand wind gusts of up to 100 miles per hour, would not pose any safety concerns, would provide for adequate storm water management, comply with landscaping requirements, that a soil report would be prepared and submitted to the Township, and that the tower would not affect the use of adjacent properties.  (N.T. Vol. 1 at 81-117, Vol. 2 at 126-44.)  He also testified that the tower and necessary communications equipment would not affect traffic conditions or generate noise and would be unlighted except for a work light that could be turned on when needed, and that there was already adequate parking at the site for maintenance personnel.  (N.T. Vol. 1 at 94, 100-01.)  Rudolph also testified that the distance from the radio tower to each of the neighboring properties would be greater than the Tower's height, preventing damage to neighboring properties caused by the Tower's falling or dropping ice and that there would be a multi-agency 911 cabinet for Upper Chichester.  (N.T. Vol. 1 at 81-118, Vol. 2 at 125-142.)  He further testified that the Applicants would install additional trees to add to the existing

buffer along Ogden's property lines and that the proposed tower would not alter the essential character or essence of the surrounding neighborhood. (N.T. Vol. 1 at 96-99, Vol. 2 at 131-136.) The record also contains the report of Dr. Ken Foster, an expert in the health affects of radio frequency and the testimony of Clement Poole, a radio frequency engineer, who testified that the Facility will comply with all applicable FCC standards regarding electromagnetic radiation. (N.T. Vol. 2 at 170-176, J.A. Ex. 7 at A-44.) Clement Poole also testified that Sprint holds a license from the FCC. (N.T. Vol. 2 at 147.) He further testified regarding studies which he performed regarding Sprint's weak wireless telecommunications service in the area of Naamans Creek Road where the Ogden firehouse is located. These studies included testing PCS coverage at nearby tall towers to see if Sprint could solve its service problems by attaching an antenna to an existing tower. (Id. at 150-68.) He determined that the Ogden location was the best location. (Id. at 168.) Poole also concluded that if Sprint were not permitted to attach an antenna to the proposed tower, Sprint would have poor to no service in that area. (Id. at 176.) He further testified that the proposed height of Sprint's antenna on the proposed tower is the minimum height necessary to alleviate Sprint's coverage problems. (Id. at 177.) In addition, William T. Robinson, Vice President of Ogden, testified that the Facility will benefit the public health, safety and welfare by enhancing communications between the fire company, the Township, School District and community. (N.T. Vol. 1 at 28.)

Despite the evidence presented by Plaintiffs in support of their Application, which satisfies the relevant requirements of §§ 1802 and 1814 of the Zoning Ordinance, the Zoning Board found that the proposed tower did not satisfy these factors. The Zoning Board reached the following conclusions:

(1) That the proposed use is not consistent with the statement of community objectives per Section 103 and the statement of purpose for the district in which the use is proposed.

(2) That the proposed use is not appropriate for the site in question in terms of size, topography, natural features, and that adequate provisions were not provided to protect sensitive environmental features.

(3) That the proposed use is not compatible with the character of the surrounding neighborhood, will interfere with or detract from legitimate uses and adjacent properties.

(4) That the proposed use will not serve not [sic] the best interest of the Township, convenience of the community and the public health, safety and welfare.

(5) That the proposed use is not consistent with the Township Comprehensive Plan.

(6) That the proposed use will not reflect effective site planning and design in terms of energy efficiency, environmental protection and aesthetic composition.

(Decision at 25-26.)  The Zoning Board based its conclusions on the following findings of fact:

1. That Appellant proposes to erect a 133 foot stand alone WCF tower for the transmission and/or reception of Wireless Communication Services as defined in the Ordinance and that the tower will accommodate the needs of the Ogden Fire Company with respect to enhancing the Fire Company's radio signal.

2. That the principal use of the proposed tower is to operate as a WCF Antenna.

3. That Appellant is located in an R-2, Medium Density Residential District.

4. That the Appellant, the Ogden Fire Company is an existing non-conforming use pursuant to the ordinance.

5. That a single 133 foot tower is not the only means by which Appellant could ameliorate or correct its alleged lack of adequate

service in the area around the Ogden Fire Company.

6. That there exist other solutions to help ameliorate the alleged lack of service other than to erect a single 133 foot stand alone WCF tower at the Appellant's location.

7. That there is adequate wireless communication service in the area around the Ogden Fire Company provided by other providers of Wireless Communication Services.

8. That Appellant did not propose a WCF antenna to be "attached to a nonresidential building or a structure of a permitted church, educational, public, municipal or governmental building or facility, and a building or structure owned by a public utility regulated by the Pennsylvania Utility Commission" which is permitted as a Special Exception in an R-2 Residential District.

9. That Appellant did not produce evidence from the owners of other structures and tall structures in the area around the Ogden Fire Company refusing to allow Appellant to attach an antenna to their existing structures and tall structures.

10. That a 133 foot stand alone tower will adversely affect the property values of the immediately adjacent residential properties.

(Decision at 19-20.)  Findings of fact 1, 2 and 8 derive directly from the Board's mischaracterization of the Application as an application by Sprint to build a stand-alone WCF tower.  Consequently, those findings of fact are irrelevant to the issue of whether the Application satisfied the requirements for special exceptions contained in Zoning Ordinance §§ 1802 and 1814.  Finding of fact 3 is correct. Finding of fact 7, that there is adequate wireless communications service in the area of Ogden's property provided by other wireless providers, is not responsive to any of the conditions for special exceptions listed in Zoning Ordinance §§ 1802 or 1814.  Finding of fact 7 is, therefore, irrelevant to the issue of whether the Application satisfied the requirements for the requested special exceptions.  Finding of fact 9 relates to a condition which must be met only if the applicant seeks

to build a stand-alone WCF tower.  Consequently, this finding of fact is also irrelevant to the issue of whether the Application satisfied the requirements for the requested special exceptions.  Finding of fact 4 is incorrect.  The parties have stipulated that the "Zoning Board granted a special exception to Ogden for a 'public use' of its property on June 19, 1969 under § 303.1 of the Township's zoning ordinance."  (Stip. ¶ 6.)

The only evidence on the written record which supports findings of fact 5 and 6, that a single 133 foot tower is not the only means by which Sprint could correct its service problems and that there are other solutions for those service problems, consists of the testimony and evidence submitted by Karen Beck, an objector to the Application.  Ms Beck, who is, admittedly, not an expert in telecommunications, testified that Sprint could solve its service problems by attaching an antenna to another tall structure in the area or by placing a tower somewhere else.  She told the Zoning Board that there is a tower in neighboring Bethel Township which is located  at an elevation 420 feet above sea level, which is 90 feet higher than the proposed Sprint tower.  (N.T. Vol. 4 at 367.)  She also informed the Zoning Board that, while driving around the Township, she noticed areas in Sprint's dead zone which are less residential in which a tower could be put and tall structures on which Sprint could attach an antenna, such as electrical towers located in Delaware. (Id. at 367-68, 416-17.)  She submitted pictures of some of these structures to the Zoning Board. . (J.A. Ex. 8 at P-17, P-20, and P21.)  However, there is no evidence that any of the areas or tall structures identified by Ms. Beck is located within one mile of the Ogden firehouse, the location where Sprint claims it needs to put a WCF antenna in order to close its gaps in service, or that any of the tall structures are sufficiently tall that attaching an antenna to one of them would solve Sprint's coverage problems.  The Court finds that findings of fact 5 and 6 are, therefore, not supported by substantial evidence.

The only evidence in the record which supports finding of fact 10 is testimony by objectors to the Application who reside near Ogden's property that the proposed tower would affect their property values.  Arthur Sokolove, who acted as a spokesman for other individuals living near the Ogden property, testified about neighbors' concerns that they will be unable to sell their homes if the tower were built: " I am under oath and I am testifying.  I would not have bought my house with that tower there.  I wouldn't have bought the house under any circumstances with that tower there. I'm sure I'm not the only one that feels that way." (N.T. Vol. 3 at 299.)  Linda McDonald, another neighbor, testified that she did research on the internet and learned that houses in New York with towers sold for ten to twenty-five percent less than houses without towers.  (Id. at 302-303.)  She also spoke with real estate agents and learned that  houses with towers will eventually sell, but it will take longer to sell them and they will sell for less money.  (Id. at 303-304.)  Ms. McDonald did not identify the source of her internet research of the identities of the real estate agents with whom she spoke.  (Id. at 302-04.)  Regina Hartney, who does not live adjacent to the Ogden property, but who once worked as a realtor, testified that:  "if you took a poll I can guarantee you that the vast majority of people would not choose to buy a home with a 100 foot tower in their backyard if they have a choice not to." (Id. at 318.)  She had not, however, taken such a poll or studied the impact of a radio tower on the price of nearby homes.  (Id. at 318-320.)

Generalized concerns about aesthetics and property values are not sufficient to satisfy the objectors' duty of presentation.  The duty of presentation "requires [objectors] to establish their objection with a 'high degree of probability,' and raise 'specific issues' concerning the proposal's general detrimental effect on the community." Pine Grove I, 20 F. Supp. at 879 (quoting Manor Healthcare Corp. v. Lower Moreland Twp. Zoning Hearing Bd., 590 A.2d 65, 71 (Pa. Commw. Ct.

1991)).  Indeed, "the evidence of objectors must show a high probability of an adverse impact that will pose a substantial threat to the health and safety of the community.  Mere speculation as to possible harm is insufficient."  Broussard, 831 A.2d at 772 (citations omitted).  The United States Court of Appeals for the Third Circuit has recognized that "'[a] few generalized concerns about a potential decrease in property values, especially in light of [the plaintiff]'s contradictory expert testimony,'" does not constitute substantial evidence for the purposes of § 332(c)(7)(B)(iii) of the TCA.  Pine Grove II, 181 F.3d at 409 (quoting Cellular Telephone Co. v. Town of Oyster Bay, 166 F.3d 490, 496 (2d Cir.1999)).  The Court finds, accordingly, that finding of fact 10 is not supported by substantial evidence on the written record.

The Zoning Board's conclusion that the Application did not satisfy the conditions for special exceptions contained in Zoning Ordinance §§ 1802 and 1814 relies on findings of fact 1, 2, 4, 5, 6, 7, 8, 9, and 10, which are irrelevant or not supported by substantial evidence in the written record.  The Zoning Board's conclusion is not, therefore, supported by substantial evidence on the written record.  Accordingly, the Court finds, as a matter of law, that the Zoning Board's conclusion that the Application did not satisfy the conditions for the requested special exceptions violated 47 U.S.C. § 332(c)(7)(B)(iii).  The Court concludes, therefore, that Plaintiffs are entitled to the entry of summary judgment in their favor on their claim, in Count II of the Complaint, that the Zoning Board's denial of their application for special exceptions was not supported by substantial evidence in the written record.

3.    Entitlement to a variance

Sprint applied, in the alternative, for a variance from the provisions of Zoning Ordinance § 302 to allow the proposed monopole, equipment and use.  Ogden applied for a variance for the

31

height of the proposed tower pursuant to Zoning Ordinance § 305.8.  In order to obtain a variance

under the Zoning Ordinance the applicant must establish "a. That a literal enforcement of the

provisions of [the] Ordinance will result in unnecessary hardship . . .; and b. That the allowance of

the variance will not be contrary to the public interest."   Zoning Ordinance § 2107.1.   The

Pennsylvania Municipal Planning Code states that a zoning board may grant a variance where it finds

all of the following relevant factors:

> (1) That there are unique physical circumstances or conditions . . .
> peculiar to the particular property and that the unnecessary hardship
> is due to such conditions and not the circumstances or conditions
> generally created by the provisions of the zoning ordinance in the
> neighborhood or district in which the property is located.
> (2) That because of such physical circumstances or conditions, there
> is no possibility that the property can be developed in strict
> conformity with the provisions of the zoning ordinance and that the
> authorization of a variance is therefore necessary to enable the
> reasonable use of the property.
> (3) That such unnecessary hardship has not be created by the applicant.
> (4) That the variance, if authorized, will not alter the essential
> character of the neighborhood or district in which the property is
> located, nor substantially or permanently impair the appropriate use
> or development of adjacent property, nor be detrimental to the public
> welfare.
> (5) That the variance, if authorized, will represent the minimum
> variance that will afford relief and will represent the least
> modification possible of the regulation in issue.

53 Pa. Stat. § 10910.2.

Plaintiffs contend that the Zoning Board's findings supporting the denial of the variance were

not based on substantial evidence.  The Zoning Board denied the variances on the grounds that there

are no unique physical circumstances or conditions of the property that would create an unnecessary

hardship; that the property can, and has, been developed in conformity with the provisions of the

Zoning Ordinance; that there is no evidence of any unnecessary hardship that was not created by the

Plaintiffs; that the variance would alter the essential character of the neighborhood; that the variance is not the minimum variance necessary to afford relief; that the variance would adversely affect the public health, safety and welfare; and that the variance would conflict with the Township's Comprehensive Plan.  (Decision at 24-25.)

Defendants argue that the Zoning Board's denial of the requested variances is supported by substantial evidence in the written record because Plaintiffs did not show that they would suffer from an unnecessary hardship if the variances were denied.  The Pennsylvania Supreme Court has held that an applicant claiming unnecessary hardship must show that: "(1) the physical features of the property are such that it cannot be used for a permitted purpose; or (2) that the property can be conformed for a permitted use only at a prohibitive expense; or (3) that the property has no value for any purpose permitted by the zoning ordinance.  Hertzburg v. Zoning Bd. Of Adjustment of the City of Pittsburgh, 721 A.2d 43, 47 (Pa. 1998) (citing Allegheny West Civic Council, Inc. v. Zoning Bd. of Adjustment of the City of Pittsburgh, 689 A.2d 225, 227 (1997)).  Defendants maintain that the Plaintiffs have not satisfied these requirements.  There is no evidence on the written record which would support the proposition that the physical features of Ogden's property are such that it cannot be used for a permitted purpose.  Indeed, the property is used for a firehouse and banquet hall. (Decision at 24.)  The Court finds that Plaintiffs did not satisfy the requirement that they establish that literal enforcement of the Zoning Ordinance would result in unnecessary hardship as required by Pennsylvania law.  See Hertzburg,721 A.2d at  47.  Consequently, the Court further finds, as a matter of law, that Defendants' decision to deny the requested variance is supported by substantial evidence in the written record.  The Court concludes, accordingly, that Defendants are entitled to the entry of summary judgment in their favor on Plaintiffs' claim, in Count II of the Complaint, that the

33

Zoning Board's denial of their application for variances was not supported by substantial evidence in the written record.[5]

## IV.   CONCLUSION

The Court has found that the Zoning Board violated the cellular siting subsection of the TCA by unreasonably discriminating between similarly situated providers and by denying the Ogden/Sprint Application to erect a radio tower as an accessory use to the firehouse and for special exceptions in the absence of substantial evidence in the written record supporting that decision. "The TCA does not specify a remedy for violations of the cellular siting subsection." Cellular Telephone Company v. The Town of Oyster Bay, 166 F.3d 490, 497 (2d Cir. 1999). Plaintiffs have asked this Court to order Defendants to issue a building permit to allow Ogden to build its radio tower and to allow Sprint to attach its antenna to that tower. (2/16/06 Tr. at 67.) Defendants have suggested that the Court remand this matter to the Zoning Board to hold an additional hearing with respect to Ogden's entitlement to a special exception for the height of the radio tower. (Id. at 64.) However, Plaintiffs have already presented substantial evidence to the Zoning Board in support of their application for the requisite special exceptions for the height of the radio tower and to attach Sprint's WCF antenna to that tower. (See N.T. Vol. 1 at 11-117, Vol. 2 at 126-177, 209-215, Vol.

---

[5]The legal standard with respect to Plaintiff's appeal of the Decision of the Zoning Board is the same as the legal standard with respect to Plaintiff's challenge to the Decision pursuant to 47 U.S.C. § 322(c)(7)(B)(iii). See Herzberg, 721 A.2d at 46 (noting that the applicable standard of appellate review is "whether the board committed an abuse of discretion or an error of law in granting the variance" and that "an abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence") (citing Larsen v. Zoning Bd. of Adjustment of the City of Pittsburgh, 672 A.2d 286, 288-89 (Pa. 1996)). Moreover, as discussed below, Plaintiffs may obtain an order requiring the Zoning Board to issue the requested permits pursuant to 47 U.S.C. § 332(c)(7)(B)(v). Consequently, the Court need not address Plaintiffs' zoning board appeal which is raised in Count III of the Complaint.

4 at 414-15, J.A. Ex. 7 at A-44.)

"The majority of the . . . courts which have heard these cases have held that the appropriate remedy is injunctive relief in the form of an order to issue the relevant permits." Oyster Bay, 166 F.3d at 497 (listing cases).   The Third Circuit has recognized that injunctive relief requiring the zoning board to issue the special exception and all requisite zoning and building permits is appropriate relief for violation of the cellular siting subsection of the TCA.  See Pine Grove II, 181 F.3d at 410 (affirming order of the district court which required the zoning officer of Pine Grove to issue the requested special exception and all necessary zoning and building permits after the district court found that the zoning board's decision denying the special exception was not supported by substantial evidence).  Moreover, remand to the Zoning Board would frustrate the TCA's goal of providing relief in an expedited fashion.  See 47 U.S.C. § 332(c)(7)(B)(v) (stating that the courts shall hear and decide actions brought under the cellular subsection of the TCA "on an expedited basis"); see also Pine Grove I, 20 F. Supp. 2d at 881 (determining that remanding to the zoning board which denied an application for a special exception in violation of the cellular siting subsection of the TCA "would frustrate the TCA's intent to provide aggrieved parties full relief on an expedited basis") (citation omitted).

The Court concludes, accordingly, that Plaintiffs are entitled to the issuance of an order requiring the Zoning Board to (1) grant the Application to build the proposed radio tower as an accessory use to Ogden's use of the property as a firehouse and to install related radio equipment; (2) to issue the requested special exceptions; and (3) to issue all necessary zoning permits.  An appropriate order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| OGDEN FIRE COMPANY NO. 1 and | : | CIVIL ACTION |
| SPRINT SPECTRUM, L.P. | : | |
| | : | |
| v. | : | |
| | : | |
| UPPER CHICHESTER TOWNSHIP and | : | |
| ZONING HEARING BOARD OF UPPER | : | |
| CHICHESTER TOWNSHIP | : | NO. 05-1031 |

O R D E R

**AND NOW**, this 30th day of March 2006, upon consideration of Defendants' Motion for Summary Judgment (Docket No. 19), Plaintiff's Motion for Summary Judgment (Docket No. 20), the papers filed in connection therewith, and the Hearing held on February 16, 2006, **IT IS HEREBY ORDERED** as follows:

1. Plaintiffs' Motion for Summary Judgment is **GRANTED** with respect to Count I and with respect to their claim, in Count II, that the Zoning Hearing Board of Upper Chichester Township's denial of their requests for special exceptions violates 47 U.S.C. § 332(c)(7)(B). Said Motion is **DENIED** in all other respects.

2. Defendants' Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claim, in Count II, that the Zoning Hearing Board of Upper Chichester Township's denial of their requests for variances violates 47 U.S.C. § 332(c)(7)(B). Said Motion is **DENIED** in all other respects.

3. Upper Chichester Township and the Zoning Hearing Board of Upper Chichester Township's are hereby **ORDERED** to grant the application of Ogden Fire Company No. 1 and Sprint Spectrum, L.P. to build a 130 foot monopole radio tower and related radio equipment as an accessory use to Ogden's use of its property as a firehouse and

to issue to Plaintiffs the requested special exceptions in accordance with Zoning Ordinance §§ 1706 and 303.7.  Upper Chichester Township shall issue any and all zoning permits for the proposed tower and supporting structures within 30 days of the date of this Order.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.